Filed 7/28/26  Nownejad v. Ralidis CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| CYRUS J. NOWNEJAD,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>KENNETH RALIDIS et al.,<br><br>Defendants and Respondents. | F088936<br><br>(Super. Ct. No. 22CV-00746)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Merced County.  James LaPorte, Judge.  (Retired Judge of the Kings Sup. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.) and Donald J. Proietti.*

Cyrus John Nownejad, in pro. per., for Plaintiff and Appellant.

Porter Scott, David A. Melton, and David R. Norton for Defendants and Respondents.

-ooOoo-

---

\*      Judge LaPorte presided over the hearing on the demurrer; the order sustaining the demurrer was subsequently signed by Judge Proietti.

Plaintiff Cyrus Nownejad, who has represented himself throughout these proceedings, appeals after the trial court sustained, without leave to amend, the demurrer of defendants Kenneth W. Ralidis and the Law Offices of Kenneth W. Ralidis, APLC (collectively Ralidis), to his third amended complaint.[1]  Nownejad's complaint was based on allegations that Ralidis incompetently represented him in various proceedings relating to the probate administration of his mother's estate.

On appeal, Nownejad contends the trial court erred in applying the doctrine of issue preclusion to bar his claim for breach of fiduciary duty and erroneously sustained the demurrer to his remaining claims for breach of contract, intentional misrepresentation, fraudulent concealment, conversion and public and private nuisance.[2]  He also raises procedural issues that he contends compel reversal, including that the trial court failed to explain the grounds for its ruling, prevented him from presenting oral argument on the demurrer, and failed to disclose a prior relationship with an attorney who represented another party in one of the underlying cases.  Finally, he asserts that the trial court abused its discretion in denying him leave to amend.  Finding no merit to Nownejad's contentions, we affirm.

---

[1]    Although Nownejad's notice of appeal states he is appealing a judgment of dismissal after an order sustaining a demurrer, the appellate record does not contain a judgment.  Thus, it appears Nownejad is appealing the order sustaining Ralidis's demurrer without leave to amend.  While orders sustaining demurrers are not appealable, in the interest of judicial economy we may construe the order sustaining the demurrer without leave to amend as a final appealable judgment.  (*Chavez v. Alco Harvesting, LLC* (2024) 102 Cal.App.5th 866, 870.)  We do so here.

[2]    In the trial court proceedings, the parties and the trial court used the older term "collateral estoppel" to refer to the doctrine of issue preclusion.  The parties continue to use the older term in their appellate briefing.  In this opinion, we refer to this doctrine as "issue preclusion," its current preferred name.  (See *Samara v. Matar* (2018) 5 Cal.5th 322, 326 ["We … use 'issue preclusion' in place of 'direct or collateral estoppel' "]; *DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 824 ["Issue preclusion, … historically called collateral estoppel, describes the bar on relitigating issues that were argued and decided in the first suit"].)

**FACTUAL AND PROCEDURAL BACKGROUND**

## I.  Factual Background.

According to the operative third amended complaint, Nownejad, Gita Nownejad, and the Estate of Edyna Marie Sischo-Nownejad (the estate) (collectively the malpractice plaintiffs) retained Ralidis to close probate on a home and a painting collection so the paintings and the proceeds of the sale of the home could be distributed to the estate's beneficiaries, Nownejad and Gita.  Over the course of four years, Ralidis, who represented Nownejad from Fall 2017 to June 30, 2021, filed cases related to the probate action, including a civil malpractice action against Lenice Wilson as Trustee of the Wilson Charles & Lenice 2015 Revocable Living Trust (Wilson), King & King Law Offices, and Cyril Lawrence and the Law Offices of Cyril Lawrence, Inc., PLC, regarding the validity of liens filed on the home, in Merced County Superior Court Case No. 16CV-03808 (the malpractice action).

On March 5, 2021, the superior court filed an order in the malpractice action denying the malpractice plaintiffs' motion to disqualify Rickey Wallace and his law firm from representing Wilson.[3]  The motion alleged Wallace and his firm "engaged in 'side switching' " to represent Wilson against the malpractice plaintiffs in the probate case and malpractice action.  The court found the only " 'side switching' " was by malpractice plaintiffs Nownejad and Gita, who brought the malpractice action against attorneys they claim either represented them or owed them a duty as a result of the attorneys' representation of other individuals.  The court found "the claims of conflict are frivolous, are solely intended to cause unnecessary delay, and are not made in good faith, or with a

---

[3]     The order, which was entered by the Honorable Donald J. Proietti, is entitled: "Order re: Plaintiff's Motion to Disqualify Rickey Wallace, Esq. and his Law Firms from Representing Defendant Lenice Wilson as Trustee of the Wilson Charles & Lenice 2015 Revocable Living Trust incorrectly named as Estate of Charles Rayburn Wilson Due to Multiple Conflicts of Interest With Plaintiffs" (the disqualification order).  Judge Proietti, who heard the demurrer to a second amended complaint in the present action, took judicial notice of the disqualification order when ruling on that demurrer.

3.

good faith belief that grounds for disqualification exist under the law of the State of California."

The court made numerous factual findings regarding: (1) the drafting of the will at issue and the parties' relationships to the drafting attorneys and their firm, essentially finding that the malpractice plaintiffs did not have an attorney-client relationship with the attorneys who drafted the will and the law did not prohibit Wallace and his firm from representing the will's executor; (2) the attorney-client relationship between Charles Rayburn Wilson, his client Gita, and the probate of the estate, and the parties' relationships with Charles Rayburn Wilson and his firm; and (3) the administration of the estate.[4]

The court found untrue the motion for disqualification's assertions that the attorney fee liens placed on the estate's assets were void, unlawful, and a breach of duty and, even if the assertions were true, they were not a basis to disqualify Wallace and his firm from representing Wilson, who was one of the liens' beneficiaries. The court found frivolous the assertion that Wilson's attorneys breached a duty owed to Nownejad and

---

[4]    As pertinent here, the superior court made the following findings. In 1973, Edyna Marie Sischo-Nownejad asked Thomas Kane, of the law firm Kane and Canelo, to prepare a formal will. Kane passed away before he could do so and Adolph Canelo or his staff prepared the will. Charles Rayburn Wilson became an associate of Kane and Canelo in 1974 and left the firm in 1997 to become a sole practitioner. In 2005, Wilson filed a petition to probate the Sischo-Nownejad's estate at Gita's request and Gita was appointed the estate's administrator. During the probate proceedings, Lawrence King, of the law firm King & King, substituted in as Gita's attorney of record. In 2007, Gita filed a petition for final distribution, which included an award of statutory attorney fees to Wilson and Keith C. King of the law firm King & King, which were to be paid from the estate's proceeds with the residual divided between Gita and Cyrus Nownejad. A judgment was entered for the attorney fees, which remained a lien against the estate's assets until paid in full. The estate, however, was never closed, and in 2015, Cyrus was appointed the successor executor after Gita resigned. In the subsequent legal malpractice action that Gita and Cyrus brought against the various attorneys, Wilson's successor in interest, Lenice Wilson as Trustee of the Wilson Charles & Lenice 2015 Revocable Living Trust, was represented by Rickey Wallace, of the Canelo law firm.

4.

Gita in their capacities as the estate's beneficiaries by obtaining a lien that gave the attorneys' liens priority over the beneficiaries. The court further found that even if there were a legal basis to disqualify Wallace or his law firm from representing Wilson in the defense of Charles Rayburn Wilson's alleged legal malpractice, the motion to disqualify must be denied due to the extreme prejudice to Lenice Wilson and the "extreme delay" in bringing the motion.

## II.     The Demurrers to the Complaint and First Amended Complaint.

In March 2022, Nownejad filed a complaint against Ralidis alleging multiple causes of action. Nownejad filed a first amended complaint in May 2023, after the trial court sustained Ralidis's demurrer to the complaint with leave to amend. Ralidis demurred to the first amended complaint, which the trial court sustained with leave to amend.

## III.    The Demurrer to the Second Amended Complaint.

In September 2023, Nownejad filed a second amended complaint which alleged 18 causes of action, including professional negligence, breach of fiduciary duty, intentional and negligent misrepresentation, conversion, and several counts premised on an alleged employment relationship between Nownejad and Ralidis.

In a demurrer to the second amended complaint, Ralidis argued all causes of action failed to plead facts sufficient to support a cause of action. Ralidis argued, as pertinent here: (1) the professional negligence claim failed to allege how Nownejad would have succeeded in the underlying case, and he could not do so given the trial court's findings in the underlying case as stated in the disqualification order; (2) Nownejad failed to allege the specific acts that constitute a breach of fiduciary duty; (3) the intentional misrepresentation claim did not allege facts to show Ralidis made knowingly false representations to Nownejad; (4) the fraudulent concealment claim did not allege facts showing Ralidis suppressed or concealed any material facts from Nownejad or what action he would have taken had he known the facts; (5) the conversion

claim did not allege what specific acts Ralidis did to commit conversion; (6) the breach of contract claims failed to allege what acts constitute a breach of contract; and (7) the 12 causes of action premised on an employment relationship between Nownejad and Ralidis failed to allege a valid employment relationship and Nownejad could not do so as he was Ralidis's client, not his employee.

Nownejad filed an opposition to the motion in which he asked the court to overrule the demurrer because the second amended complaint alleged all required elements with specificity and, if not, to grant him leave to amend. Nownejad argued, among other things, that the disqualification order should not preclude him from suing Ralidis because issue preclusion did not apply.

In reply, Ralidis asserted he was not necessarily arguing issue preclusion applied; rather, he was arguing the disqualification order was an example of how Nownejad could not establish that the underlying cases would have succeeded. Nevertheless, Ralidis argued that issue preclusion applied as: (1) there was a final adjudication, since the disqualification order was no longer appealable and the case was closed; (2) there were identical factual issues, as the disqualification order addressed the allegations in the underlying lawsuit upon which this lawsuit was based; (3) the issues were actually litigated and necessarily decided; and (4) there was privity, as Nownejad, the party against whom the doctrine was being asserted, was the same party in both matters.

The trial court issued a tentative ruling to grant Ralidis's request for judicial notice and to sustain the demurrer.[5] Following a hearing on the demurrer, the trial court adopted its tentative ruling. The trial court sustained the demurrer, finding, as pertinent here: (1) the professional negligence claim failed because Nownejad was collaterally estopped from relitigating the viability of the claims Ralidis litigated on his behalf based on findings made in the disqualification order; (2) the breach of fiduciary claim failed to

---

[5]     Judge Proietti presided over the demurrer to the second amended complaint and entered the order sustaining the demurrer with leave to amend.

allege harm or damage as a result of the alleged breaches and the disqualification order's factual findings precluded any claim that Ralidis's wrongful conduct caused Nownejad's failure to prevail in the underlying action; (3) the misrepresentation and concealment claims failed for the same reason; (4) there was no conversion in the underlying claim and nothing Ralidis could have done to change the outcome of the underlying case; (5) there could not be a breach of contract because Ralidis could not have done anything to change the outcome of the underlying action; and (6) the employment-related claims failed because Nownejad did not perform work for Ralidis as an employee. The trial court granted Nownejad leave to amend.

## IV. The Demurrer to the Third Amended Complaint.

Nownejad filed a third amended complaint, which is about 200 pages and alleges the following six causes of action against Ralidis: (1) intentional and negligent breach of attorney fiduciary duties; (2) breach of express written legal service agreement and of the implied covenant of good faith and fair dealing; (3) intentional misrepresentation; (4) fraudulent concealment; (5) conversion; and (6) public and private nuisance. Nownejad subsequently filed a notice of errata regarding typographical errors in the third amended complaint.

Ralidis demurred to the third amended complaint on the ground that none of the causes of action stated facts sufficient to constitute a cause of action. Ralidis argued the first cause of action for breach of fiduciary duty essentially realleged the same facts the court determined were barred by issue preclusion and as such, those allegations must be dismissed. Ralidis stated the third amended complaint alleged the following breaches of fiduciary duty as counts: (1) filing frivolous claims and motions, such as the disqualification motion; (2) failing to obtain a court order to remove former defendant Wilson's expired lien; (3) allowing Nownejad to incur discovery sanctions; (4) filing frivolous claims against the City of Merced; (5) failing to file a probate insurance bond claim; and (6) failing to bring a conversion claim against former defendant Lawrence.

7.

Ralidis noted there were other allegations that did not fit into these counts that made no sense, such as allegations relating to his previously dismissed employment-related causes of action which cannot be maintained given the court's order on the demurrer to the second amended complaint.

Ralidis argued that even if these counts were not previously adjudicated in the court's prior order, the third amended complaint failed to state a cause of action for breach of fiduciary duty because: (1) the breaches are premised on the California Rules of Professional Conduct, which do not alone give rise to a cause of action for damages; (2) while Nownejad attempts to use the disqualification order to argue the disqualification motion and the prior lawsuits should not have been filed, Nownejad hired Ralidis to file these lawsuits; and (3) it was not apparent from the face of the complaint that Nownejad retained Ralidis to perform several of the alleged tasks.

Ralidis contended the breach of contract claims failed because Nownejad did not allege the specific acts that constituted a breach of contract other than realleging a cause of action for legal malpractice. With respect to the intentional misrepresentation and fraudulent concealment claims, Ralidis asserted Nownejad did not allege that Ralidis made knowingly false statements, what material facts were concealed, how Nownejad was unaware of the facts, or what he would not have done had he known the facts; rather, the complaint simply realleged a legal malpractice claim.

With respect to the claim that Ralidis converted money, Nownejad's case file, and the estate paintings, Ralidis argued Nownejad failed to allege the specific acts by which Radilis converted these items, how Ralidis came to possess the money, and whether Nownejad asked for the case file. Ralidis pointed out that Nownejad admitted Ralidis did not manually take the paintings and Ralidis could not convert the paintings by failing to retrieve them from Nownejad's former attorneys.

Ralidis argued the private nuisance claim failed because the alleged nuisance occurred before he became involved in the litigation and the third amended complaint

appeared to allege Ralidis was liable because he did not succeed in abating an existing nuisance on the property. Finally, the public nuisance claim failed because the third amended complaint failed to allege the nuisance Ralidis allegedly created affected the public at large and there is no causative link between Ralidis's alleged conduct and Nowendaj's harm.

## V. The Opposition to the Demurrer to the Third Amended Complaint.

Nownejad filed an opposition to the demurrer. Nowendaj argued the first five of the alleged breaches of fiduciary duty and the remaining causes of action were based on different facts than the malpractice action, and they had nothing to do with the liability of the defendants in the malpractice action but rather Ralidis's liability only. Nownejad asserted that consequently issue preclusion did not apply to these claims.

Nownejad argued issue preclusion could only arguably apply to his claim that Ralidis breached his fiduciary duty by failing to bring a conversion claim against former defendant Lawrence in the malpractice action. Nowendaj contended that, given the findings in the disqualification order that the claims made in the disqualification motion were frivolous and not made in good faith, Ralidis was collaterally estopped from refuting his breaches of fiduciary duty. Nowendaj argued that Ralidis could not use the disqualification order to argue Nowendaj was collaterally estopped from bringing a breach of fiduciary claim, as the elements of issue preclusion were not satisfied.

Nownejad submitted an 11-page declaration, in which he made additional arguments concerning each of cause of action in response to the demurrer. In the declaration, Nownejad requested that the demurrer be overruled and, alternatively, that he be given leave to amend to add facts that would support his claims.

## VI. Ralidis's Reply in Support of the Demurrer.

In reply, Ralidis asserted that issue preclusion barred the breach of fiduciary claim because, since the disqualification order found that the claims against the defendants in the malpractice action were meritless, any breach of fiduciary duty made no difference to

the current litigation. Ralidis argued the remaining causes of action did not state valid claims. Ralidis urged the court to disregard Nownejad's request to grant him leave to amend, as he had been afforded three attempts to amend yet had not been able to do so and it was a waste of judicial resources to allow him to plead facts from 20 years ago that did not involve Ralidis.

**VII.      The Hearing on the Demurrer.**

The hearing on the demurrer was held on August 28, 2024, before the Honorable James LaPorte. At the outset, the court stated it had issued a tentative ruling, and it wanted the parties to address Nownejad's request for leave to amend. The trial court asked Nownejad to address the pleading changes he would like to make to the third amended complaint. Nownejad responded that he thought the complaint "is just simply too long and sleep inducing for somebody to evaluate," and it would easier on the court if he "could just summarize it and clearly state it." Nownejad added that he could make the complaint shorter and more understandable.

The trial court asked Nownejad whether his sister burned down his house. Nownejad denied that was the case and stated that was "[c]ompletely different facts." Nownejad asserted the complaint was only about Ralidis, none of the claims except one were about the malpractice action, and he could "explain that if Your Honor …." The court interjected that it did not have a lot of time as the dependency calendar ran late, but he should go ahead. Nownejad stated that all the claims were related to Ralidis and Nownejad had a valid cause of action against Ralidis assuming it was true that Ralidis breached the alleged fiduciary duties and caused the house to burn down and the loss of his painting conversion claim against the former defendants.

The trial court turned to Ralidis's counsel, who argued that Nownejad should not be given leave to amend, as he could not say how Ralidis was responsible for the home burning down. The court stated it was trying to find out if Nownejad had a "quick solution" to the problem the court related in its tentative ruling, which sounded like the

10.

solution would be a redraft of the complaint in another format. Nownejad stated, "Yes, Your Honor."

The trial court asked Nownejad if the matter was submitted. Nownejad responded that he wanted to argue each cause of action, which would take a "good 40 minutes." The court stated it reviewed Nownejad's paperwork and pleadings and asked if he was going to add anything that was not in them. Nownejad responded, "Yeah. I have a 45-minute argument." The court responded that was "interesting," because if it was not in the pleadings the court was "not interested in it. If all you are going to do is come up with some interesting novel theory, you can state it in a few words as opposed to 40 minutes." The court further stated that there was no reason to file a written opposition and declaration if he was going to say that none of that mattered and he wanted to talk about something else. Nownejad stated he wanted to "argue the points." The court asked him what he would add that was not in the paperwork. Nownejad responded that he "pled all the elements and supporting facts," and he should at least be given a chance to amend the complaint. Nownejad asserted his home burned down because Ralidis sat on the case for four years, and Ralidis was retained to help him abate and prevent the nuisance and sell the estate home, but his failure to act led to the home being destroyed.

The trial court thanked Nownejad for his comments and stated it was going to adopt the tentative. The court directed Ralidis's counsel to prepare the appropriate order. That same day, Judge LaPorte signed and entered a written order which stated that the demurrer to the third amended complaint was sustained without leave to amend.

## VIII.   The Order Sustaining the Demurrer Without Leave to Amend.

On October 1, 2024, a written order was filed, signed by Judge Proietti, which referenced the August 28, 2024, hearing on the demurrer and stated that the demurrer to the third amended complaint was sustained without leave to amend. The order stated the court found: (1) the first cause of action for breach of fiduciary relationship was barred by issue preclusion; (2) the second cause of action for breach of legal services agreement

11.

failed to allege facts establishing a breach; (3) the third and fourth causes of action for intentional misrepresentation and fraudulent concealment failed to state specific facts establishing either claim; (4) the fifth cause of action for conversion failed to state specific facts establishing that the money was in fact converted; and (5) the sixth cause of action failed to state an action for nuisance against Ralidis. On each count, the court stated that it had offered previous opportunities to state a claim but to date Nownejad declined to do so, and it appeared a further grant of leave to amend would be futile.

## DISCUSSION

### I. Standard of Review.

"On an appeal from a judgment of dismissal entered after a demurrer has been sustained, the issue is whether, assuming the truth of all well pleaded facts and those subject to judicial notice, the complaint alleges facts sufficient to state a cause of action." (*Nealy v. County of Orange* (2020) 54 Cal.App.5th 594, 600.) " 'If the complaint states a cause of action under any theory, regardless of the title under which the factual basis for relief is stated, that aspect of the complaint is good against a demurrer.' " (*Denny v. Arntz* (2020) 55 Cal.App.5th 914, 920.) When the demurrer is sustained without leave to amend, we must further decide " 'whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse.' " (*McKenney v. Purepac Pharmaceutical Co.* (2008) 167 Cal.App.4th 72, 78.)

While our review of the sufficiency of the complaint is de novo, appellant still bears the burden of demonstrating error. (*Denny v. Arntz*, *supra*, 55 Cal.App.5th at p. 920.) "In order to demonstrate error, an appellant must supply the reviewing court with some cogent argument supported by legal analysis and citation to the record." (*City of Santa Maria v. Adam* (2012) 211 Cal.App.4th 266, 286–287.) Likewise, while we review the denial of leave to amend for an abuse of discretion, the "burden of demonstrating a reasonable probability that the defect can be cured by amendment 'is

squarely on the plaintiff.' " (*McKenney v. Purepac Pharmaceutical Co.*, *supra*, 167 Cal.App.4th at p. 78.)

## II. Procedural Issues.

We first address the issues Nownejad raises concerning due process and judicial bias. He contends the trial court failed to provide legal or factual grounds for sustaining the demurrer and denying leave to amend, precluded him from presenting oral argument on the demurrer, and Judge Proietti failed to disclose that he once worked with an attorney who represented one of the defendants in the malpractice action. We address these claims in turn.

### A. *The Sufficiency of the Order Sustaining the Demurrer.*

Nownejad attacks the trial court's order as procedurally defective because it did not provide the legal or factual grounds upon which it sustained the demurrer. He asserts the ruling is conclusory, failed to address the various theories pled in the third amended complaint, and denied leave to amend without explanation.

This argument misapprehends the nature of our independent review. We review the judgment, not the trial court's reasoning, and "must affirm … if any of the grounds stated in the demurrer is well taken." (*Fremont Indemnity Co. v. Fremont General Corp.* (2007) 148 Cal.App.4th 97, 111; see *Rossi v. Sequoia Union Elementary School* (2023) 94 Cal.App.5th 974, 985; *Brinsmead v. Elk Grove Unified School Dist.* (2023) 95 Cal.App.5th 583, 587 (*Brinsmead*) ["We affirm if any proper ground for sustaining the demurrer exists even if the trial court did so on an improper ground"].)

It is true that when a court sustains a demurrer without leave to amend, it is required to state "the specific ground or grounds upon which the decision or order is based which may be by reference to appropriate pages and paragraphs of the demurrer." (Code Civ. Proc., § 472d.) The grounds for demurrer are those listed in Code of Civil Procedure section 430.10, which includes the failure to state facts sufficient to constitute a cause of action. (*Id.*, § 430.10, subd. (e).) But "[t]he *grounds* for demurrer differ from

13.

the *reasons* for sustaining a demurrer on a particular ground. A court sustaining a demurrer is required to state the specific grounds for its decision, but is not required to state its reasons for sustaining the demurrer on the specified grounds." (*Fremont Indemnity Co. v. Fremont General Corp.*, *supra*, 148 Cal.App.4th at p. 111, italics added.)

Code of Civil Procedure section 472d "was designed to fit a situation where multiple grounds are set forth in a demurrer. In such case, the court is required to specify the ground or grounds upon which it ruled so that a reviewing court may be apprised as to which grounds were relied upon by the ruling court." (*Berkeley Police Assn. v. City of Berkeley* (1977) 76 Cal.App.3d 931, 943.) Here, Ralidis's demurrer stated a single ground: Each cause of action failed to state facts sufficient to constitute a cause of action. (Code Civ. Proc., § 430.10, subd. (e).) In sustaining the demurrer, the court stated its reasons for doing so, finding that the first cause of action was barred by issue preclusion and the remaining causes of action failed to state specific facts to support those claims. The court did not violate the dictates of Code of Civil Procedure section 472d. As Ralidis's demurrer raised only one ground and the court found the demurrer was well-taken, the court necessarily based its decision on that ground. (*Schuetram v. Granada Sanitary Dist.* (1964) 229 Cal.App.2d 25, 31 [contention the court erred in failing to state basis of decision sustaining demurrer was "frivolous" where demurrer raised a single ground].)

For these reasons, we reject Nownejad's argument that the order sustaining the demurrer was insufficient.

### B. *Oral Argument on the Demurrer.*

Nownejad contends his due process rights were violated when the trial court did not allow him to present oral argument on the demurrer. While Nownejad asserts he was denied the right to present oral argument, the reporter's transcript of the hearing tells a different story. The transcript shows the trial court allowed Nownejad to address whether

he should be granted leave to amend but when Nownejad asked for 40 minutes to address each cause of action, the court denied that request. Instead, the court tried to narrow Nownejad's argument to points not raised in his opposition papers and when Nownejad could not do so, it sustained the demurrer.

"A trial court has the inherent authority and responsibility to fairly and efficiently administer the judicial proceedings before it. [Citations.] This authority includes the power to supervise proceedings for the orderly conduct of the court's business and to guard against inept procedures and unnecessary indulgences that tend to delay the conduct of its proceedings. [Citation.] In this vein, the court has the power to expedite proceedings which, in the court's view, are dragging on too long without significantly aiding the trier of fact." (*California Crane School, Inc. v. National Com. for Certification of Crane Operators* (2014) 226 Cal.App.4th 12, 22, fn. omitted.) We review for abuse of discretion a court's exercise of its authority to control proceedings. (*People ex rel. Reisig v. Acuna* (2017) 9 Cal.App.5th 1, 23–24.)

Here, we find no abuse of discretion in the trial court's limitation of oral argument. When Nownejad requested 40 minutes to argue each cause of action on the merits of sustaining the demurrer, the court told him that it reviewed his paperwork and pleadings, he was limited to arguing whatever facts were in the pleadings and gave him an opportunity to state what he would add to his opposition papers. The record shows the court gave Nownejad the opportunity to explain why the demurrer should not be sustained. Accordingly, the court did not abuse its discretion in expediting proceedings.

C. *Judicial Bias.*

In a convoluted argument, Nownejad contends that Judge Proietti failed to reveal that he and Eric Beiswanger, an attorney who represented one of the defendants in the malpractice action, worked at the same law firm from 2008 to 2009. He reasons that because Judge Proietti ruled in favor of Beiswanger's client in the disqualification order, which was the basis for the finding in this proceeding that Nownejad was collaterally

15.

estopped from bringing a breach of fiduciary duty claim, Judge Proietti was biased against him when he "made the ruling on this demurrer."

Under California Code of Judicial Ethics, canon 3E(2)(a), a judge is required to "disclose information that is reasonably relevant to the question of disqualification under Code of Civil Procedure section 170.1, even if the judge believes there is no actual basis for disqualification." Nownejad contends Judge Proietti was required to disclose his prior working relationship with Beiswenger because that fact was relevant to the question of disqualification under Code of Civil Procedure section 170.1, subdivision (a)(6), which requires disqualification if the judge believes recusal would further the interests of justice or there is a substantial doubt about the judge's capacity to be impartial, or a person aware of the facts might reasonably entertain a doubt that the judge would be able to be impartial. Nownejad asserts he was prejudiced because Judge Proietti's rulings "are and could be tainted by this undisclosed connection," and had he known of the relationship he would have moved to disqualify Judge Proietti under Code of Civil Procedure section 170.6.

Nownejad's claim, however, is not cognizable on appeal. "[A] petition for writ of mandate is the exclusive method by which a party may seek review of the question of disqualification of a judge." (*Brown v. American Bicycle Group, LLC* (2014) 224 Cal.App.4th 665, 672 (*Brown*); see Code Civ. Proc., § 170.3, subd. (d).) Nownejad, however, failed to seek judicial disqualification below, and he claims on appeal that he could not do so as Judge Proietti did not reveal his association with the attorney from the malpractice action.

"[A] party who firsts discovers facts during the pendency of an appeal indicating the disqualification of a judge or arbitrator should raise the disqualification issue at the earliest opportunity, rather than waiting until the appellate process is exhausted and the trial court is again vested with jurisdiction." (*Betz v. Pankow* (1993) 16 Cal.App.4th 931, 940.) In circumstances where the appellant discovers evidence supporting

16.

disqualification while an appeal is pending, the appellant's recourse is to seek a writ of error coram vobis. (*Chaganti v. Superior Court* (2021) 73 Cal.App.5th 237, 247 (*Chaganti*); *Betz v. Pankow*, *supra*, 16 Cal.App.4th at p. 941.)[6] A postjudgment disqualification claim cannot be raised on appeal from the judgment because "[t]he appeal is limited to the appellate record, and the factual basis for [the judge's] disqualification does not appear in the appellate record." (*Chaganti*, at p. 247.)[7] The same is true here.

Even if we were to consider Nownejad's claim that Judge Proietti was disqualified because he worked with an attorney who represented a defendant in the malpractice case in 2008 and 2009, the claim is meritless. Code of Civil Procedure section 170.1 does not apply to such a remote relationship. (Code Civ. Proc., § 170.1, subd. (a)(2)(B)(ii)

---

[6] A writ of error *coram vobis* is used to correct errors of fact that cannot be corrected in any other manner. (*Chaganti*, *supra*, 73 Cal.App.5th at p. 243.) Such a writ is granted when the petitioner meets the following requirements: (1) a fact existed which, without fault or negligence on the petitioner's part, was not presented to the court at the trial on the merits and would have prevented entry of judgment if presented; (2) the newly discovered evidence does not go to the merits of the issues tried; and (3) the fact was not known to the petitioner and could not have been discovered earlier in the exercise of due diligence. (*Ibid.*)

[7] We recognize that Nownejad filed a request to take judicial notice of the factual basis for Judge Proietti's disqualification, namely, a LinkedIn professional profile of Eric Beiswanger and Judge Proietti's Trellis.Law judicial profile. We deferred ruling on his June 4, 2025, request for judicial notice, in which Nownejad also asked us to take judicial notice of the disqualification order and the case summary in the malpractice action, which he asserts is relevant to show when the disqualification order was filed in that case.

We deny the June 4, 2025, request in its entirety. With respect to the material from the websites, the general rule is that appellate courts " 'will consider only matters which were part of the record at the time the judgment was entered.' " (*In re Marriage of Eustice* (2015) 242 Cal.App.4th 1291, 1300, fn. 3.) Thus "[r]eviewing courts generally do not take judicial notice of evidence not presented to the trial court." (*Ibid.*) Even assuming the requested documents qualified for judicial notice, Nownejad concedes they were not presented to the trial court. With respect to the disqualification order and case summary, we have already augmented the record with the order, and the case summary is irrelevant since the order shows when it was filed.

17.

[association with lawyer *in past two years*]; *Chaganti*, *supra*, 73 Cal.App.5th at p. 242, fn. 4.)

Nownejad, however, contends he was denied due process due to Judge Proietti's participation in the litigation—a claim that is cognizable on appeal. " '[N]otwithstanding the exclusive-remedy provision of Code of Civil Procedure section 170.3, "a [party] may assert on appeal a claim of denial of the due process right to an impartial judge." [Citation.]' [Citation.] 'The Due Process Clause entitles a person to an impartial and disinterested tribunal in both civil and criminal cases.' " (*Brown*, *supra*, 224 Cal.App.4th at p. 673.)

Nownejad claims Judge Proietti was biased for several reasons. He argues that Judge Proietti's failure to disclose his bias through disclosure of his prior working relationship with Beiswanger violated his right to due process. We reject this argument as such a remote relationship does not establish bias. Nownejad also contends that Judge Proietti was biased against him by making erroneous legal rulings and denying him oral argument at the hearing on the demurrer. The mere fact that Judge Proietti issued rulings adverse to Nownejad, even assuming they were erroneous, "does not indicate an appearance of bias, much less demonstrate actual bias." (*Brown*, *supra*, 224 Cal.App.4th at p. 674.) Moreover, Judge Proietti did not preside over the hearing on the demurrer, therefore any denial of oral argument and the adverse ruling on the demurrer is not attributable to him. Accordingly, we reject Nownejad's claim that his due process right to an impartial judge was violated.

## III. First Cause of Action: Breach of Fiduciary Duty

Nownejad's second amended complaint alleged a claim for professional negligence and an alternative claim for breach of fiduciary duty, which were based on the same conduct. While in sustaining the demurrer to both causes of action the trial court gave Nownejad leave to amend both claims, Nownejad chose not to reallege a

professional negligence claim; rather, he only realleged an amended breach of fiduciary duty claim.

The third amended complaint's breach of fiduciary claim is essentially based on the same alleged attorney incompetence as the prior professional negligence claim. Nownejad alleged that Ralidis breached the fiduciary duties he owed Nownejad as his attorney in the malpractice action when Ralidis violated rules 1.1, 1.3, 1.4, 1.7, 3.1 of the Rules of Professional Conduct, State Bar of California[8] by: (1) filing frivolous claims and motions; (2) failing to obtain a court order to remove an expired judgment lien on the estate home; (3) allowing Nownejad to incur discovery sanctions; (4) filing a frivolous claim against the City of Merced; (5) failing to file a probate insurance bond claim for damage to the estate property; and (6) failing to bring a conversion claim against former defendant Lawrence for failing to return the paintings.

In demurring to this cause of action, Ralidis asserted: (1) the cause of action realleged the facts contained in Nownejad's prior claim for professional negligence that the court determined was barred by issue preclusion therefore, any duplicative allegations must be dismissed; (2) to extent any of these allegations were not previously adjudicated, they did not give rise to a cause of action because they asserted breaches of the Rules of Professional Conduct; and (3) it was not apparent from the face of the operative complaint that Nownejad retained Ralidis to remove the judgment lien, file a probate insurance claim, or file a conversion claim against former defendant Lawrence, and there was no indication that Ralidis would have been successful on either claim. In sustaining the demurrer, the trial court found the breach of fiduciary duty claim was barred by issue preclusion.

"To establish a cause of action for breach of fiduciary duty, a plaintiff must demonstrate the existence of a fiduciary relationship, breach of that duty and damages."

---

[8] All references to rules are to the Rules of Professional Conduct.

(*Charnay v. Cobert* (2006) 145 Cal.App.4th 170, 182.) Nownejad demonstrated that Ralidis owed him a fiduciary duty as his counsel in the underlying action. (*Cal Pak Delivery, Inc. v. United Parcel Service, Inc.* (1997) 52 Cal.App.4th 1, 11.) He alleges the duties Ralidis breached are those articulated in the Rules of Professional Conduct. We note that " '[a] violation of the Rules of Professional Conduct subjects an attorney to disciplinary proceedings, but does not in itself provide a basis for civil liability.' " (*De Meo v. Cooley LLP* (2025) 115 Cal.App.5th 17, 39.)[9] The rules, however, " 'together with statutes and general principles relating to other fiduciary relationships, all help define the duty component of the fiduciary duty which the attorney owes to his or her client.' " (*BGJ Associates v. Wilson* (2003) 113 Cal.App.4th 1217, 1227.) While the third amended complaint alleges that Ralidis breached the rules, it does not allege any duty that Ralidis breached apart from the rules. Since a violation of the rules does not provide a basis for civil liability as a matter of law, the demurrer could be sustained on this basis.[10]

In any event, the trial court did not err in finding the breach of fiduciary duty claim was barred by issue preclusion. While breach of fiduciary duty is a species of tort distinct from a cause of action for professional negligence (*Ash v. North American Title Co.* (2014) 223 Cal.App.4th 1258, 1276), the two torts require the identical showing of causation: the plaintiff must demonstrate that the misconduct " ' "was a substantial factor in the result." ' " (*Stanley v. Richmond* (1995) 35 Cal.App.4th 1070, 1095.) As our

---

[9] Rule 1.0(b)(3) provides: "A violation of a rule does not itself give rise to a cause of action for damages caused by failure to comply with the rule. Nothing in these rules … is intended to enlarge or to restrict the law regarding the liability of lawyers to others."

[10] We note that the trial court did not decide whether breach of a duty was adequately alleged based on the rules. Nownejad contends we cannot affirm the sustaining of the demurrer on grounds the trial court did not adopt, but as we have explained, it is well settled that we must affirm an order sustaining a demurrer if any of the grounds stated in the demurrer are proper. (*Brinsmead*, *supra*, 95 Cal.App.5th at p. 587.)

Supreme Court has explained, absent unusual situations, this standard "produces the same results as does the 'but for' rule of causation which states that a defendant's conduct is a cause of the injury if the injury would not have occurred 'but for' that conduct." (*Rutherford v. Owens–Illinois, Inc.* (1997) 16 Cal.4th 953, 969.)

Where the plaintiff's injury is due to an attorney's professional negligence, "the gravamen of the claim is legal malpractice, regardless of whether it is pled in tort or contract." (*Kracht v. Perrin, Gartland & Doyle* (1990) 219 Cal.App.3d 1019, 1022 (*Kracht*).) Thus, as with a claim for legal malpractice, the plaintiff is required to prove that but for the defendant's breach of fiduciary duty " ' "the plaintiff would have obtained a more favorable judgment or settlement in the action in which the malpractice allegedly occurred." ' " (*Gutierrez v. Girardi* (2011) 194 Cal.App.4th 925, 934 (*Gutierrez*).)

Since the breach of fiduciary duty claim is based on Ralidis's purported incompetence in the malpractice action, to prevail on this claim Nownejad must demonstrate that he would have obtained a better result in that action had Ralidis provided competent counsel. The trial court found he could not do so as the findings made in the disqualification order show that he could not prevail in the malpractice action.

Nownejad contends the trial court improperly gave preclusive effect to the disqualification order. Issue preclusion "prohibits the relitigation of issues argued and decided in a previous case, even if the second suit raises different causes of action." (*DKN Holdings LLC v. Faerber*, *supra*, 61 Cal.4th at p. 824.) "Under issue preclusion, the prior judgment conclusively resolves an issue actually litigated and determined in the first action." (*Ibid.*) "[I]ssue preclusion applies (1) after a final adjudication (2) of an identical issue (3) actually litigated and necessarily decided in the first suit and (4) asserted against one who was a party in the first suit or in privity with that party." (*Id.* at p. 825; see *Lucido v. Superior Court* (1990) 51 Cal.3d 335, 341 (*Lucido*).)

21.

The trial court correctly found the earlier litigation precluded relitigation of the question of whether Nownejad would have obtained a better result in the malpractice action, i.e., whether Ralidis's alleged negligence was the cause in fact of Nownejad's failure to prevail in the underlying action. As described in the disqualification order, the malpractice action alleged that Charles Wilson, while representing Nownejad and Gita without obtaining their informed consent to represent them both, probated their mother's will, and the probate was negligent and tainted by Wilson's breaches of fiduciary duties, including taking an illegal judgment against his clients in the same case, not protecting the estate and beneficiaries' interests knowing the estate's personal administrator, Gita, was mentally incapacitated, and taking liens and advocating them against the interests of his clients.

The superior court made multiple findings that show the malpractice action was frivolous. It found that there was no credible evidence that the attorney fee liens were improper, unlawful, or voidable, as Nownejad and Gita failed to demonstrate any basis to vacate the attorney fee awards or collaterally attack the awards 13 years after they were issued. The superior court further found: (1) the plaintiffs' contention that the executor's attorneys breached a duty owed to them by obtaining a lien giving the attorneys compensation priority over the beneficiaries' rights to the estate's residual was frivolous; (2) Gita and Nownejad, as executor and successor executor, may have breached the duty they owed the attorneys as creditors of the estate by allowing the estate assets to waste away while the administrative expenses remained unpaid; (3) the evidence submitted in support of the disqualification motion did not establish that Gita lacked all mental capacity during her representation by Charles Wilson or the other attorneys sufficient to overcome the presumption that she was competent to make decisions; (4) the evidence failed to establish any knowledge her attorneys might have had concerning her potential lack of capacity; and (5) there was no dispute that Edyna Sischo-Nownejad's will that was being probated was consistent with her testamentary intent that Nownejad and Gita

22.

would be her sole residual beneficiaries, which was the distribution that the probate court ordered. These findings show that Nownejad could not prevail in his malpractice claim against Wilson and the other attorneys.

The disqualification order is final because it was immediately appealable and Nownejad failed to appeal it. (*URS Corp. v. Atkinson/Walsh Joint Venture* (2017) 15 Cal.App.5th 872, 878; *Machado v. Superior Court* (2007) 148 Cal.App.4th 875, 882, 886 ["an order granting or denying a disqualification motion is an appealable order"; if the order is not appealed, "[i]t is a final order for purposes of issue preclusion"].) These findings were actually litigated and necessarily decided in the earlier suit. An issue is actually litigated when it is properly raised, is submitted for determination, and is determined, while an issue "was ' "necessarily decided" ' " if " 'the issue was not " 'entirely unnecessary' " to the judgment in the prior proceeding.' " (*Murphy v. Murphy* (2008) 164 Cal.App.4th 376, 400.) These issues were submitted for determination, supported by evidence, and the superior court determined their merits. The issues were not entirely unnecessary to the ruling on the disqualification motion, as they supported the superior court's denial of the motion.

Finally, the issues were asserted against Nownejad as a party in the malpractice action. Mutuality is not required (*Bernhard v. Bank of America Nat'l Trust & Sav. Ass'n* (1942) 19 Cal.2d 807, 812–813); rather, due process is satisfied because Nownejad had a full and fair opportunity to litigate the issues. (*Roos v. Red* (2005) 130 Cal.App.4th 870, 880.) The fairness policies underlying preclusion are advanced here—preserving the integrity of the judicial system, promoting judicial economy, and protecting litigants from harassment by vexatious litigation—are present here. (*Lucido*, *supra*, 51 Cal.3d at pp. 342–343.)

Nownejad argues issue preclusion does not apply because the disqualification order addressed different legal and factual issues than those asserted in his breach of fiduciary duty claim. Issue preclusion, however, does not require identity of claims.

23.

"The identical issue requirement 'addresses whether "identical factual allegations" are at stake in the two proceedings.' " (*Ayala v. Dawson* (2019) 13 Cal.App.5th 1319, 1327; see *Lucido*, *supra*, 51 Cal.3d at p. 342.) "[I]n determining whether the identity requirement is satisfied, courts must be mindful of the need to distinguish 'issues' from 'legal theories.' " (*Wimsatt v. Beverly Hills Weight etc. Internat., Inc.* (1995) 32 Cal.App.4th 1511, 1517.) Issue preclusion may bar subsequent litigation on the same set of facts even though different causes of action are involved. (*Evans v. Celotex Corp.* (1987) 194 Cal.App.3d 741, 746.) Identity of legal theories or causes of action is not required; rather, issue preclusion bars relitigation of the same issues. (*Ibid.*) "If it did, there would be no end to litigation for injuries arising out of the same facts, as long as a party could offer another legal theory by which the issue might be differently decided." (*Id.* at pp. 746–747; see *Sutphin v. Speik* (1940) 15 Cal.2d 195, 205 ["Defendant has simply offered another legal theory by which the *same issue* might be differently decided"].) Here, as discussed above, the issue of causation was adequately addressed in the disqualification order and the superior court's findings are dispositive of whether Nownejad can prevail on his fiduciary duty claim premised on professional negligence.

Nownejad argues the trial court misapplied preclusion because the earlier ruling had no bearing on his breach of fiduciary duty claim. Nownejad, however, treats the prior ruling as dispositive of overlapping issues. Indeed, he contends the disqualification order "conclusively established and made express findings that Ralidis breached his fiduciary duties," therefore, he is "collaterally estopped from denying that he breached" the fiduciary duties he owed to Nownejad. Thus, Nownejad concedes the earlier adjudication addressed the same nucleus of facts and material issues he now raises.[11] He

---

[11] On August 29, 2025, Nownejad filed a request for judicial notice in which he asked us to take judicial notice of a January 22, 2021, minute order filed in *In re Matter of: Inspection and Abatement of 1050 Rambler Road, Merced, CA*, Merced County Superior Court case No. 21CV-00133. Nownejad asserted the minute order was relevant to the appeal because it established the superior court adjudicated the existence of a nuisance and ordered abatement/demolition, Ralidis consent to the demolition, and

cannot simultaneously claim the prior decision was preclusive in his favor and nonpreclusive against him. Because the elements of issue preclusion were satisfied and public policy considerations favor preclusion, the trial court properly sustained the demurrer to the breach of fiduciary claim on estoppel grounds.

**IV.      Second Cause of Action: Breach of Contract.**

In his breach of contract claim, Nownejad pled that he had a written legal service contract with Ralidis, which the parties signed in July 2018. The legal service contract is attached to the third amended complaint as an exhibit.[12] Nownejad alleged that Ralidis breached the legal service contract by: (1) creating or assisting in creating a public nuisance at the estate home; (2) unlawfully and unnecessarily filing numerous claims, appeals, and motions in the probate and malpractice cases; and (3) failing to correctly and promptly evaluate, research, investigate, and assist with the sale of the estate home and to close probate promptly, which led to fires at the estate home in 2020 and to a public nuisance abatement action.

Nownejad specifically alleged Ralidis breached the legal services contract by: (1) failing to provide legal services as the case may reasonably require in violation of clause A(1); (2) failing to use best efforts to keep costs and fees to those reasonably necessary for effective resolution or unavoidable litigation, in violation of clause A(1); (3) causing unnecessary harm in pursuing Nownejad's claims in violation of both provisions of clause A(1); (4) failing to use his best efforts to represent Nownejad's interests and devote his professional abilities to the matters at issue and failing to respond

---

Ralidis's conduct was a substantial factor in causing Nownejad's damages. Nownejad further asserted the minute order supported his argument that issue preclusion applies to bar Ralidis from disputing the existence of a nuisance for which he was liable. We deferred ruling on the request, which we now deny as the minute order is not relevant to the resolution of the issues on appeal.

[12]      Nownejad also pled that he had an oral and implied-in-fact contract with Ralidis to represent Nownejad in the probate and malpractice cases from the fall of 2017 to June 30, 2021, but Nownejad does not allege any breaches of these alleged agreements.

promptly to Nownejad's inquiries and communications, in violation of clause A(2); (5) failing to complete the probate of the estate before he withdrew on June 30, 2021, investigate possible defenses, and to continue to investigate any potential conflicts of interest or other actions reasonably required to complete the probate, in violation of clause B(3); (6) filing two appeals when clause A(1) excluded appeals from legal services to be rendered; (7) charging Nownejad "unconscionable hourly fees" when the contract provided for a contingency fee of 40 percent of the gross recovery, in breach of clause B(1); (8) charging hourly fees instead of filing a motion or petition in the probate case to recover extraordinary fees in violation of clause B(3); (9) failing to negotiate a compromise and settlement of any claim or suit on Nownejad's behalf with the defendants in the malpractice action and the city defendants in breach of clause B(8); (10) failing to assess the lien claims and update Nownejad about any settlement overtures or discussions in breach of clause B(8) ; and (11) providing incompetent representation in the probate and malpractice cases, and failing to associate competent counsel, in breach of clause B(1), (2) & (3).  Nownejad further alleged Ralidis breached the implied covenant of good faith and fair dealing by failing to close probate and requiring Nownejad to perform tasks related to the case.

In his demurrer, Ralidis argued Nownejad failed to state claims for breach of contract and breach of the implied covenant of good faith and fair dealing because he did not allege what specific acts constituted a breach of contract aside from realleging a claim for legal malpractice, and he could not allege such claims based solely on the outcome of the underlying cases.  The trial court sustained the demurrers on the contract claims based on the failure to allege facts establishing a breach.

On appeal, Nownejad argues that he adequately alleged the elements of breach of contract and breach of the implied covenant.  Ralidis counters that Nownejad failed to plead a specific contractual term that allegedly was breached by specific conduct and he

does not allege a specific act that constitutes a breach of contract aside from realleging a cause of action for legal malpractice

"[T]he elements of a cause of action for breach of contract are (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 821.) "A written contract may be pleaded either by its terms—set out verbatim in the complaint or a copy of the contract attached to the complaint and incorporated therein by reference—or by its legal effect." (*McKell v. Washington Mutual, Inc.* (2006) 142 Cal.App.4th 1457, 1489.)

Two types of breach of contract actions may arise from an attorney's representation of a client. An attorney typically undertakes by contract to do all things necessary to prosecute the client's claims. (*Benard v. Walkup* (1969) 272 Cal.App.2d 595, 603; *Neel v. Magana, Olney, Levy, Cathcart & Gelfand* (1971) 6 Cal.3d 176, 180–181, superseded by statute on other grounds.) Accordingly, when an attorney fails to exercise sufficient skill, prudence or diligence in performing the attorney's duties, such failure can lead to both a tort claim and a breach of an express or implied term of the contract. (*Neel*, at pp. 180–181.) As we have explained, if the plaintiff's injury is caused by an "attorney's professional negligence, the gravamen of the claim is legal malpractice, regardless of whether it is pled in tort or contract." (*Kracht*, *supra*, 219 Cal.App.3d at p. 1022.) Thus, as in the breach of fiduciary duty claim, since Nownejad's breach of contract claim is based on an attorney's negligence, he must show that, but for Ralidis's negligence, a better result could have been obtained in the underlying action. (*Gutierrez*, *supra*, 194 Cal.App.4th at p. 934.)

To the extent Nownejad's breach of contract claim is based on Ralidis's alleged failure to diligently and properly prosecute his claims in the probate and malpractice actions, it is precluded for the same reason as the breach of fiduciary claim—he cannot show he could have obtained a better result in the underlying actions.

27.

The other type of breach of contract action a plaintiff may have against a former attorney arises out of a fee dispute that is separate from a legal malpractice claim. (See *Tana v. Professionals Prototype I Ins. Co.* (1996) 47 Cal.App.4th 1612, 1617.) Failing to explain a fee agreement, demanding unreasonably high bonuses from settlement proceeds, charging for work that was not performed, inflating the time charged for services and other billing improprieties that do not implicate the attorney's competence and due care in representing the client may serve as the basis of a breach of contract claim that is not the equivalent of a malpractice action. (*Id.* at pp. 1617–1618; *Bird, Marella, Boxer & Wolpert v. Superior Court* (2003) 106 Cal.App.4th 419, 427–428, 429–430.)

Nownejad alleges Ralidis breached the legal services contract by charging him hourly fees for filing frivolous appeals and a frivolous government claim against the city defendants when the contract provided for a contingency fee. This is not a fee dispute separate and distinct from legal malpractice. Nownejad does not allege that he paid Ralidis for work that was not performed; rather, he claims that Ralidis charged him for frivolous work. Moreover, Nownejad did not seek to recover any attorney fees paid to Ralidis as damages in his breach of contract claim. Thus, all the alleged breaches involved professional negligence and therefore a breach of contract claim based upon them is precluded by the findings in the disqualification order.

Moreover, as Ralidis argues, while the third amended complaint alleges a plethora of evidence that Nownejad asserts constitutes a breach of contract and generally pleads the provisions in the legal services contract that he believes were breached, he does not link the two. A complaint must allege the ultimate facts necessary to state an actionable claim and "[i]t is both improper and insufficient for a plaintiff to simply plead the *evidence* by which he hopes to prove such ultimate facts." (*Careau & Co. v. Security Pacific Business Credit, Inc.* (1990) 222 Cal.App.3d 1371, 1390 (*Careau & Co.*).)

With respect to the claim for breach of the implied covenant of good faith and fair dealing, every contract contains an implied covenant of good faith and fair dealing that " 'neither party will do anything which will injure the right of the other to receive the benefits of the agreement.' " (*Kransco v. American Empire Surplus Lines Ins. Co.* (2000) 23 Cal.4th 390, 400.) This implied covenant is "read into contracts 'in order to protect the express covenants or promises of the contract, not to protect some general public policy interest not directly tied to the contract's purpose.' " (*Carma Developers* (*Cal.*), *Inc. v. Marathon Development California, Inc.* (1992) 2 Cal.4th 342, 373.)

The allegations of a breach of the implied covenant "must show that the conduct of the defendant, whether or not it also constitutes a breach of a consensual contract term, demonstrates a failure or refusal to discharge contractual responsibilities, prompted not by an honest mistake, bad judgment or negligence but rather by a conscious and deliberate act, which unfairly frustrates the agreed common purposes and disappoints the reasonable expectations of the other party thereby depriving that party of the benefits of the agreement." (*Careau & Co.*, *supra*, 222 Cal.App.3d at p. 1395.) "If the allegations do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action, they may be disregarded as superfluous as no additional claim is actually stated." (*Ibid.*) The covenant "cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement." (*Guz v. Bechtel National Inc.* (2000) 24 Cal.4th 317, 349–350.)

Here, the implied covenant claim fails with the breach of contract claim because it merely restates the same alleged conduct and seeks the same relief. Nownejad alleges Ralidis breached the implied covenant by failing to close probate and requiring Nownejad a former attorney, to perform tasks related to the case. But the first is merely an allegation of legal malpractice, rather than a conscious and deliberate act, and the second is not tethered to the parties' contract.

29.

For these reasons, the trial court did not err in sustaining the demurrer with respect to the breach of contract claim.

## V.        Third Cause of Action: Intentional Misrepresentation.

The elements of a cause of action for fraud are: (1) a misrepresentation; (2) knowledge of falsity; (3) intent to defraud or induce reliance; (4) actual reliance by the plaintiff; and (5) resulting damage.  (*Conroy v. Regents of University of California* (2009) 45 Cal.4th 1244, 1255; *Small v. Fritz Companies, Inc.* (2003) 30 Cal.4th 167, 173; see Civ. Code, § 1709.)  Further, fraud, unlike most claims in tort, requires that each element must be pled with specificity. (*Stansfield v. Starkey* (1990) 220 Cal.App.3d 59, 73.)  "This particularity requirement necessitates pleading *facts* which 'show how, when, where, to whom, and by what means the representations were tendered.' "  (*Ibid.*)

In his intentional misrepresentation claim, Nownejad alleged that Ralidis intentionally misrepresented to him the following: (1) Ralidis adequately investigated, researched, evaluated, verified, vetted, or advised Nownejad of the correct law and facts and the risks contemplated with bringing claims against the defendants in the malpractice action, and the claims asserted in the probate and malpractice cases, as well as the other litigation concerning appeals and claims involving the City of Merced, were valid; and (2) Ralidis had not done anything unlawful or harmful to Nownejad and did not breach any fiduciary duties or contractual obligations that harmed plaintiff.

In his demurrer, Ralidis asserted these were broad allegations that did not specifically allege he made any knowingly false affirmative statements to Nownejad as required to maintain a cause of action for intentional misrepresentation.  The trial court sustained the demurrer to this claim on the ground that it failed to state specific facts establishing the claim.

On appeal, Nownejad asserts he adequately alleged that Ralidis falsely told him that the disqualification motion and various lawsuits were meritorious, experts had reviewed and supported the filings, and Ralidis researched and investigated the claims.

Nownejad asserts Ralidis admitted the motion was filed to buy time, that he lacked expertise, and he did not consult experts. But as Ralidis points out, the third amended complaint does not pinpoint the exact statement made, who made it, when and where it was made, why it was false when made, and how Nownejad relied on the statements to his detriment. Moreover, Nownejad generally alleges that had Ralidis not made these misrepresentations he would not have allowed Ralidis to file frivolous claims on his behalf and he would have obtained a better result in the underlying legal actions, but he does not tie a specific decision he made due to a specific statement made by Ralidis.

It is well settled that " '[v]ague, conclusory allegations of fraud or falsity may not be rescued by the rule of liberal construction.' " (*Allen v. Jones* (1980) 104 Cal.App.3d 207, 215.) Nownejad's failure to specifically plead facts supporting each element of his intentional misrepresentation cause of action precludes recovery on that claim. (*Wilhelm v. Pray, Price, Williams & Russell* (1986) 186 Cal.App.3d 1324, 1332.)

Moreover, the intentional misrepresentation claim does not allege any misrepresentation separate from those underlying his claims for breach of fiduciary duty and breach of contract. The misrepresentations are essentially that Ralidis told him he would perform competently without intending to do so. Thus, the misrepresentation claim is based on Ralidis's alleged incompetent performance and therefore suffers from the same deficiencies as his breach of fiduciary duty and breach of contract claims—he cannot show that he would have obtained a better result had Ralidis performed competently.

## VI.       Fourth Cause of Action: Fraudulent Concealment

" '[T]he elements of a cause of action for fraud based on concealment are: " '(1) the defendant must have concealed or suppressed a material fact, (2) the defendant must have been under a duty to disclose the fact to the plaintiff, (3) the defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff must have been unaware of the fact and would not have acted as he did if

31.

he had known of the concealed or suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiff must have sustained damage.' ” ’ ” (*Bank of America Corp. v. Superior Court* (2011) 198 Cal.App.4th 862, 870.)  Again, “[f]raud must be pleaded with specificity rather than with ‘ “general and conclusory” ’ allegations.” (*Boschma v. Home Loan Center, Inc.* (2011) 198 Cal.App.4th 230, 248.)

Here, the third amended complaint alleges that Ralidis intentionally concealed essentially the same information that Nownejad claims was affirmatively misrepresented to him: (1) that he did not adequately investigate or research the claims he asserted in the various lawsuits, and he did not advise Nownejad of the correct law and facts or of the risks contemplated with asserting those claims; (2) he breached fiduciary duties and contractual obligations that harmed Nownejad; and (3) he created or assisted in creating a harmful public and private nuisance instead of preventing it “as a consequence of not disclosing the above material facts for over three and half years.”

Ralidis argued in the demurrer that Nownejad failed to allege precisely what material facts were concealed from him, how he was unaware of the material facts, or the actions he would not have taken had he known the facts.  The trial court sustained the demurrer because the third amended complaint failed to state specific facts establishing this claim.

On appeal, Nownejad contends he adequately pled all the elements of this claim. He contends he alleged Ralidis failed to disclose prior rejections of similar disqualification motions, immunity defenses before suing the city, and problems with the appeals.  Nownejad asserts Ralidis had a disclosure duty based on the attorney-client relationship and Business and Profession Code section 6068, subdivision (m), and rule 1.4, and intent to defraud may be inferred from the alleged “strategic motive” to deceive Nownejad into supporting a meritless motion.

Ralidis responds that the third amended complaint fails to identify the precise material fact allegedly concealed, who possessed it, when a duty to disclose arose, or how

Nownejad relied on the omission in a way that caused measurable harm. We agree the third amended complaint is inadequate in this respect. Moreover, as in the intentional misrepresentation claim, Nownejad generally alleges that he would not have allowed Ralidis to file frivolous claims on his behalf and he would have obtained a better result in the underlying legal actions had he known the true facts, but he does not tie a specific decision he made due to a specific omission. Finally, the concealment claim is essentially a claim for legal malpractice that fails for the same reason as the prior claims—an inability to demonstrate that Nownejad would have obtained a more favorable result in the underlying cases. Accordingly, the trial court did not err in sustaining the demurrer to this claim.

## VII.     Fifth Cause of Action: Conversion

" ' "Conversion is the wrongful exercise of dominion over the property of another. The elements of a conversion claim are: (1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages.…" ' " (*Welco Electronics, Inc. v. Mora* (2014) 223 Cal.App.4th 202, 208.) "Money can be the subject of an action for conversion if a specific sum capable of identification is involved." (*Farmers Ins. Exchange v. Zerin* (1997) 53 Cal.App.4th 445, 452.) It is not necessary to obtain legal title or absolute ownership of the property; rather, "[a] party need only allege it is '*entitled to immediate possession at the time of conversion*.' " (*Ibid.*) However, "[a] mere contractual right to payment, without more, will not suffice." (*Ibid.*)

Here, the third amended complaint alleged that Ralidis converted the following property: (1) $6,600 and $8,437 that belonged to Nownejad by placing the money in Ralidis's personal or general business account rather than the client trust account; (2) Nownejad's case files; and (3) the painting collection, which Ralidis did not manually take but rather assumed control over and prevented Nownejad from having access to them.

33.

In the demurrer, Ralidis argued Nownejad did not allege the specific acts Ralidis did to commit the alleged conversions. Ralidis asserted it was unclear how Ralidis came to possess the funds allegedly converted or whether Nownejad asked for the case file, and Nownejad admitted Ralidis did not manually take the paintings. In sustaining the demurrer, the trial court stated that the conversion claim failed to state specific facts establishing the money was in fact converted.

On appeal, Nownejad asserts that he adequately pled the elements of conversion. He claims he alleged that he entrusted the money to Ralidis, which Ralidis refused to return despite Nownejad's demands. He further asserts he alleged Ralidis admitted he refused to return the client files to Nownejad although Nownejad had a right to them and Ralidis exercised dominion and control over the paintings.

With respect to the money, while Nownejad identifies specific amounts that he alleges Ralidis wrongfully placed into his personal or business accounts, he does not allege facts showing he had an immediate right to possess the money or when and how Ralidis wrongfully assumed dominion over it. As Ralidis points out, Nownejad does not allege the circumstances under which Ralidis came to possess the money and when and why Nownejad had an immediate right to possess the money.

With respect to the paintings, Nownejad admits that Ralidis never possessed the paintings. Instead, he alleges Ralidis exercised "dominion and control" over the paintings due to the liens that were placed against the paintings and Ralidis's mishandling of the malpractice action and related matters, which interfered with Nownejad's possession and control of the paintings and destroyed their value. These allegations, however, do not amount to an assumption of dominion over the paintings themselves. For example, Nownejad cannot show Ralidis had the power to withhold, dispose, or transfer the paintings, or the exclude the rightful owner. Mere professional involvement in litigation or probate administration does not transform this into a conversion claim as it is not an exercise of dominion over the property at issue.

34.

Finally, with respect to Nownejad's client files, Nownejad alleges that Ralidis prevented him from having access to the files and Ralidis destroyed and refused to return the case files despite three court orders and Nownejad's repeated requests. Nownejad, however, must plead nonconclusory facts showing wrongful dominion and legally recoverable damages. (Civ. Code, § 3336.) Even if Ralidis wrongfully withheld the file, Nownejad does not identify any harm he sustained that was directly traceable to the wrongful conduct. (*White v. Molfetta* (2021) 64 Cal.App.5th 628, 638 [although attorney wrongfully withheld client file, plaintiff did not identify any legal harm directly traceable to that conduct].)

Nownejad seeks to recover for the time and money spent trying to recover the complete client file, but he does not allege what those efforts were or when they were made. Although in a conversion action Civil Code section 3336 provides for recovery of "fair compensation for the time and money properly expended in pursuit of the property," these are special damages that must be specifically pleaded. (*Security-First National Bank of Los Angeles v. Lutz* (9th Cir. 1963) 322 F.2d 348, 352.) Attorney fees are not authorized under Civil Code section 3336, and recovery may be had only for efforts that have a purpose independent of litigation. (*Gladstone v. Hillel* (1988) 203 Cal.App.3d 977, 991–992; *Haines v. Parra* (1987) 193 Cal.App.3d 1553, 1559.) To the extent he may recover for his own time spent trying to recover the client file, his efforts were not independent of the litigation and therefore not recoverable.

In sum, the trial court did not err in sustaining the demurrer to the conversion claim.

## VIII. Sixth Cause of Action: Private and Public Nuisance.

The third amended complaint alleged claims for private and public nuisance. The complaint alleged that a private or public nuisance was created when vagrants broke into the estate home and caused fires in the home on December 18, 2015, and in October and December 2020, which resulted from Ralidis's breaches of fiduciary duty and failures to

act while representing Nownejad. Nownejad essentially alleges that Ralidis's litigation decisions delayed the sale of the home, which led to third parties breaking into the home and starting fires, and in turn caused the city to bring an abatement action.

A nuisance is statutorily defined as anything "injurious to health" or "indecent, or offensive to the senses, or an obstruction to the free use of property" that interferes "with the comfortable enjoyment of life or property.…" (Civ. Code, § 3479.) A "public nuisance" is one that "affects at the same time an entire community or neighborhood, or any considerable number of persons, although the extent of the annoyance or damage inflicted upon individuals be unequal." (*Id*., § 3480.) A private nuisance is "every nuisance not included in the definition" in Civil Code section 3480. (*Id*. § 3481.)

A claim for private nuisance is based on "a nontrespassory interference with the private use and enjoyment of land." (*San Diego Gas & Electric Co. v. Superior Court* (1996) 13 Cal.4th 893, 937.) The elements of an action for private nuisance are: (1) interference with the plaintiff's use and enjoyment of its property; (2) the interference must be "*substantial*, i.e., that it caused the plaintiff to suffer 'substantial actual damage,' "; and (3) the interference must be objectively unreasonable, "i.e., it must be 'of such a nature, duration or amount as to constitute unreasonable interference with the use and enjoyment of the land.' " (*Id.* at p. 938; *Today's IV v. Los Angeles County Metropolitan Transportation Authority* (2022) 83 Cal.App.5th 1137, 1176.)

In contrast to private nuisances, "public nuisances are offenses against, or interferences with, the exercise of *rights common to the public*." (*People ex rel. Gallo v. Acuna* (1997) 14 Cal.4th 1090, 1103.) The interference must be both substantial and unreasonable. (*Id.* at p. 1105.) The elements also include the existence of a duty and causation. (*Melton v. Boustred* (2010) 183 Cal.App.4th 521, 542.) "Public nuisance liability 'does not hinge on whether the defendant owns, possesses, or controls the property, nor on whether he is in a position to abate the nuisance; the critical question is whether the defendant created or assisted in the creation of the nuisance.' " (*Ibid.*)

36.

To establish causation in either private or public nuisance cases, there must be a relationship between the conduct and the impending harm; "a defendant's action must not only create a risk of some harm, it must also be likely to lead to invasion of the public right at issue." (*In re Firearm Cases* (2005) 126 Cal.App.4th 959, 988, fn. omitted.) The conduct that makes a defendant liable for either public or private nuisance " 'may consist of (a) an act; or (b) a failure to act under circumstances in which the [defendant] is under a duty to take positive action to prevent or abate the interference with the public interest or the invasion of the private interest.' " (*Ibid*.)

Nownejad's causation allegations fail to establish the necessary relationship (or causal link) between Ralidis's alleged improper acts or omissions and the damage to the estate home allegedly caused by vagrancy, break-ins, vandalism, fires, and a city demolition and abatement process. Nownejad's nuisance claims are predicated on Radilis's alleged failure to promptly resolve the probate case and sell the estate home; he asserts that if the home had been sold sooner, it would not have been damaged by third parties and condemned by the city. We agree with Ralidis that the link between his litigation conduct and the nuisance created by third parties is too attenuated to satisfy nuisance causation as a matter of law. Nuisance liability does not attach merely because a defendant's alleged wrongdoing led to damage involving the property; the plaintiff must plead facts showing the defendant created or assisted in creating a nuisance. (*Melton v Boustred*, *supra*, 183 Cal.App.4th at p. 542.) Here, the third amended complaint does not alleged that Ralidis created the nuisance or that he assisted the third parties in creating the nuisance.

Since the third amended complaint does not alleged causation as a matter of law, the trial court did not err in sustaining the demurrer to Nownejad's private and public nuisance claims.

## IX. Denial of Leave to Amend.

Nownejad contends the trial court abused its discretion in denying him leave to amend. Nownejad requests leave to amend all six causes of action and to allege additional causes of action for unfair competition, and intentional and negligent interference with prospective economic advantage.

As we have stated, we review a denial of leave to amend for abuse of discretion. (*Koszdin v. State Comp. Ins. Fund* (2010) 186 Cal.App.4th 480, 487.) To show an abuse of discretion, the plaintiff has the burden of demonstrating that "there is a reasonable possibility the plaintiff could cure the defect with an amendment." (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.) "If we find that an amendment could cure the defect, we conclude that the trial court abused its discretion and we reverse; if not, no abuse of discretion has occurred." (*Ibid.*)

Here, Nownejad has not met his burden of showing a reasonable possibility of curing the defects in the six causes of action. He has not proposed any amendment that would remedy the identified defects. Moreover, the trial court previously granted Nownejad leave to amend and Nownejad failed to cure the defects. (See *Tudor v. City of Rialto* (1958) 164 Cal.App.2d 807, 814 ["It is difficult to establish any clear rule as to just how far a trial court should go in aiding a pleader by detailed explanation of defects in pleading. However, where, as here, the demurrer itself and the authorities cited in support thereof before the trial court amply pointed out the defects and plaintiffs in their amended complaint failed to in any degree supply the deficiency shown, the trial court's action in refusing to permit amendment to the amended complaint will not be disturbed unless there has been a manifest abuse of discretion"].)

Nownejad also asserts he could allege new causes of action that were not alleged in the four prior complaints. Nownejad, however, did not submit a proposed amended complaint and in his opening brief, he failed to enumerate facts and demonstrate how they establish these causes of action. (*Boyd v. Freeman* (2017) 18 Cal.App.5th 847, 854

38.

[to meet the plaintiff's burden to show what facts could be pled to cure the complaint's defects, " 'a plaintiff must submit a proposed amended complaint or, on appeal, enumerate the facts and demonstrate how those facts establish a cause of action' "].)

Nownejad explains for the first time in his reply brief the facts he would use to allege each element of causes of action for intentional and negligent interference with prospective economic advantage, constructive fraud, and unfair competition.  We ordinarily do not consider points raised for the first time in a reply brief unless good cause is shown for the failure to raise them in the opening brief.  (*Julian v. Hartford Underwriters Ins. Co.* (2005) 35 Cal.4th 747, 761, fn. 4; *In re Marriage of Turkanis & Price* (2013) 213 Cal.App.4th 332, 355.)  "Obvious reasons of fairness militate against consideration of an issue raised initially in the reply brief of an appellant."  (*Varjabedian v. City of Madera* (1977) 20 Cal.3d 285, 295, fn. 11.)  Accordingly, we do not consider the argument.

In sum, there was no abuse of discretion in denying leave to amend.

## DISPOSITION

The judgment is affirmed.  Costs on appeal are awarded to Respondents.


LEVY, Acting P. J.

WE CONCUR:


SNAUFFER, J.


GUERRA, J.

39.